2006-NMSC-036

141 P.3d 526

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Michael ARMENDARIZ, Defendant–Appellant.**

No. 28,320.

Supreme Court of New Mexico.

Aug. 3, 2006.

Corrected Aug. 28, 2006.

John Bigelow, Chief Public Defender, Karl Erich Martell, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

Patricia Madrid, Attorney General, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellee.

**OPINION**

MAES, Justice.

{1} This is a direct appeal taken from the imposition of a life sentence plus thirteen years for Defendant's convictions of first degree murder, attempted murder, aggravated battery, tampering with evidence, and possession of a firearm by a felon. Those convictions stem from the shooting death of New Mexico State police officer Damacio Montaño and the non-fatal shooting of Eric Montaño outside the Two Minute Warning bar in Los Lunas, New Mexico. Defendant presents two issues for this Court's review. First, Defendant argues that the trial court erred when it refused to allow him to present specific conduct evidence to support his contention that the decedent was the first aggressor. Second, Defendant asserts that his convictions for aggravated battery and attempted murder violate double jeopardy protections. Finding no merit in Defendant's claims, we affirm.

## I. Background

{2} Although several conflicting stories detailing the events surrounding the shooting were presented at trial, it is clear that there was a series of altercations throughout the evening at the Two Minute Warning bar. These events culminated in the forcible removal of many individuals from the bar and with the bar owner locking the entrance to the establishment when violence erupted. Defendant was at the bar that night with his friend, Nestor Chavez, and several female companions. Brothers Damacio and Eric Montaño, two off-duty police officers, along with Damacio's wife, Lina Montaño, were also at the bar that night. When fighting broke out inside the establishment between various individuals, Damacio and Eric, along with the bar's bouncers, began removing people from the bar. At some point, Defendant,

Nestor Chavez, and their companions either left or were escorted out of the bar.

{3} Once outside, Defendant, Nestor Chavez, and two of the women who were with them that night gathered inside Defendant's car. Shortly thereafter, Damacio approached the car. Again, there was conflicting testimony regarding why Damacio approached the car and what prompted his interaction with Defendant and Nestor. Eric Montaño testified that he and his brother were approaching yet another fight in the parking lot when they were intercepted by Nestor Chavez, who began punching them. The defense witnesses presented a very different picture, testifying that it was only after Damacio charged toward Defendant's car that Nestor got out of the car and began struggling with Damacio. While Eric Montaño and others testified that Damacio was merely trying to restrain Nestor in a typical law enforcement fashion, the defense presented witness testimony that Damacio, a large man, was actually beating up Nestor, and that Eric walked up and also began beating Nestor.

{4} In any event, after some period of chaotic altercation between the Montaño brothers, Nestor Chavez, Defendant, and their female companions, Defendant retreated briefly and returned with a gun. Again, there was conflicting testimony regarding whether the Montaño brothers at that point identified themselves as police officers and whether Damacio made any sudden movements toward Defendant. What is clear is that Defendant opened fire, shooting Eric Montaño once and Damacio seven times. While Eric Montaño survived the shooting, Damacio's wounds were fatal.

{5} Defendant was charged with ten crimes: first degree murder, two counts of conspiracy to commit murder, attempted murder, aggravated battery with a deadly weapon, two counts of tampering with evidence, two counts of conspiracy to commit tampering with evidence, and possession of a firearm by a felon. Two essentially different stories were presented to the jury at Defendant's trial regarding the interaction between Damacio and Defendant. Defendant main-

tained that it was Damacio, with the help of his brother Eric, who initiated the altercation and that Defendant armed himself and ultimately shot both men in defense of Defendant's friend, Nestor Chavez. The State presented testimony that it was Defendant and Nestor Chavez who instigated the altercation and that police officers Damacio and Eric Montaño were merely trying to restrain Defendant and Nestor when the violence escalated to the point of the shooting. Defendant was convicted of first degree murder, attempted murder, aggravated battery, tampering with evidence, and possession of a firearm by a felon.

## II. Discussion

### A. Trial Court's Exclusion of Victim's Prior Conduct

■■■ {6} Defendant argues that the trial court improperly excluded testimony from Damacio's widow, Lina Montaño. In general, we review a trial court's admission or exclusion of evidence for abuse of discretion. *State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995). An abuse of discretion arises when the evidentiary ruling is clearly contrary to logic and the facts and circumstances of the case. *Id.*

{7} Shortly before trial commenced, the State moved to exclude "any evidence of or reference to alleged domestic violence between decedent Damacio Montaño and his widow, Lina Montaño." That motion was filed in response to co-defendant Nestor Chavez's request for any documentation filed in the Fifth Judicial District Court related to possible incidences of domestic violence between Damacio Montaño and his wife. In the motion, the State argued that any such evidence was irrelevant under the New Mexico Rules of Evidence and that the prejudicial effect of any such information or its tendency to confuse the issues or mislead the jury would outweigh its possible probative value.

{8} The trial court heard argument from counsel on the issue during a pretrial conference. Defense counsel argued in support of the admission of alleged incidences of domestic violence, stating, "[m]y defense is centered around that, and if I don't even have

that much, then I've got even less. I was going to bring up that Damacio Montaño had a propensity for the violence ... [a]nd I did want to paint Mr. Damacio in the most accurate light as possible, that he was a violent, aggressive man and obviously a drunk, violent, aggressive man who had an alcohol level of 1.4 in him at the time." The State again argued relevancy and prejudice and questioned the accuracy of Defendant's assertions. Prior to ruling on the motion, the trial court agreed to conduct a suppression hearing in chambers to accurately determine the substance of Lina Montaño's possible testimony.

{9} At the suppression hearing, Lina Montaño testified that there were two incidents of domestic violence between her and Damacio, one of which occurred while she was pregnant with her first child, or shortly thereafter, and one of which resulted in the termination of Damacio's employment with the Artesia Police Department. She described the incidents as involving pushing and slapping. After the second incident, Lina obtained a temporary restraining order against her husband. Lina consistently maintained that Damacio did not have any problems with alcohol and was not intoxicated during either domestic dispute, and that she had never seen her husband fight anyone. She also indicated that she and Damacio had received counseling and had not had any additional domestic disputes since the second incident.

{10} At the conclusion of the hearing, the trial court judge announced that he did not believe that "there [was] a sufficient showing to [the] court of a pertinent trait of the victim in [the] matter, and [he couldn't] see how it would come up" in accordance with Rule 11–404(A)(2) NMRA. He stated that under Rule 11–403 NMRA balancing, the proposed testimony would not be more prejudicial than probative, but that the admission was nonetheless precluded by Rule 11–404 NMRA.

{11} The New Mexico Rules of Evidence allow for the admission of "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same or evidence of

a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor." Rule 11–404(A)(2) NMRA. Under Rule 11–405(B) NMRA, "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim or defense, proof may also be made of specific instances of that person's conduct," in addition to proof in the form of reputation or opinion testimony. Rule 11–405 NMRA, therefore, creates an exception to the general rule that only reputation or opinion testimony is permitted on direct examination to prove a character trait. Finally, the Rules of Evidence allow for the exclusion of evidence, even if relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice." Rule 11–403 NMRA.

{12} Defendant argues primarily that he should have been allowed to demonstrate that the victim, Damacio, had a propensity for violence and aggression, through the introduction of specific instances of violent conduct between Damacio and his wife. Defendant argues that such evidence was certainly relevant to his defense, that is, to his contention that Damacio was the first aggressor in the altercation preceding the shooting. In contrast, the State argues that any specific evidence of Damacio's prior domestic disputes was neither relevant nor probative as to whether Damacio was the first aggressor. The State also argues that, under existing caselaw, no defendant is entitled to offer instances of specific conduct to prove that the victim was the first aggressor.

{13} The apparent confusion regarding whether specific instances of a victim's conduct may be offered to demonstrate that he or she was the first aggressor appears to have arisen from two identically-captioned cases, *State v. Baca,* 114 N.M. 668, 845 P.2d 762 (1992) ("*Baca I* ") and *State v. Baca,* 115 N.M. 536, 854 P.2d 363 (N.M.Ct.App.1993) ("*Baca II* ").[1]

{14} In *Baca I,* this Court addressed the trial court's refusal to admit specific instances of the victim's prior violent conduct. The

defendant was on trial for the first degree murder of a fellow prison inmate. The defendant proffered testimony from himself and from another inmate regarding specific instances of prior violent conduct committed by the victim. The trial court refused to admit the evidence. This Court stated that the trial court retains discretion to determine admissibility, and "an abuse of discretion may be found only if the exclusion of the evidence precluded the criminal defendant from proving an element of his defense." 114 N.M. at 672, 845 P.2d at 766 (citing *State v. Gallegos,* 104 N.M. 247, 253–54, 719 P.2d 1268, 1274–75 (N.M.Ct.App.1986)). The issue was whether the trial court was proper in excluding the requested evidence. This Court held that it was because the exclusion did not prevent the defendant from proving an element of his defense. *Id.* at 672–73, 845 P.2d 762, 845 P.2d at 766–67.

{15} *Baca II* involved the consolidated appeal of two defendants who stabbed another resident while he was asleep at the Springer Boys' School. To support their contention that the victim was the first aggressor, the defendants sought discovery of the victim's "master file" held by the detention facility, stating that the file contained evidence of the victim's prior violent behavior, including "any psychiatrics done, all previous arrests, any forensics that may have been done, any adjudications, any problems he's had at the Boys' School, any problems elsewhere, family's history. It's a complete background of the person." *Baca II,* 115 N.M. at 538, 854 P.2d at 365 (internal quotation marks omitted). Defense counsel maintained that he did not know precisely what was in the file that could aid his clients' defense, but nonetheless sought discovery of the entire file. *Id.* The district court ordered the release of many of the documents requested, explaining that the victim's character was at issue due to the defendants' claim of self-defense. However, the district court did not allow the defendants access to documents in the master file "that detailed specific instances of the vic-

---

**1.** *See* Mark R. Horton, *Whether a Defendant's Claim of Victim Aggressiveness is an "Essential Element" of the Defense of Self-Defense: State v.* *Baca I & II,* 24 N.M. L.Rev. 449 (1994) (discussing the conflict between *Baca I* and *Baca II* ).

tim's prior conduct in which [d]efendants were not implicated." *Id.*

{16} On appeal, the defendants asked the Court of Appeals to consider whether the trial court erred in denying their motion for release of the victim's complete master file, despite the access they received to many of the documents contained therein. The Court of Appeals framed the issue as "whether specific instances of a victim's prior conduct of which the [d]efendants were not aware would have been admissible to support [d]efendants' theory of the case." *Id.* at 539, 854 P.2d at 366. The Court stated, "[w]e believe the answer depends on whether [d]efendants would have been entitled to offer such evidence to prove the victim was the first aggressor in the incident material to this appeal." *Id.* The Court, although noting that both the State and the defendants had construed *Baca I* as allowing for the admission of specific instances of conduct to show that the victim was the first aggressor, nonetheless stated that it did not read *Baca I* as so permitting. *Id.* at 540, 854 P.2d at 367. The *Baca II* court recognized that the discussion in *Baca I* concerning the issue was dicta, and therefore not binding. The *Baca II* court also stated that *Baca I* "clarif[ied] New Mexico law on the issue of whether, when evidence of reputation or opinion is offered under [Rule 11–405] to show that the victim was the first aggressor, a defendant must have been aware of that reputation or opinion." *Id.*

{17} We agree with the Court of Appeals' interpretation of *Baca I* and hereby clarify that evidence of specific instances of a victim's prior violent conduct may not be admitted to show that the victim was the first aggressor when the defendant is claiming self-defense. The New Mexico Rules of Evidence only allow evidence of specific instances of a person's conduct when the character or character trait of that person is an essential element of a charge, claim, or defense. Rule 11–405(B) NMRA. The elements of self-defense are: (1) there was an appearance of immediate danger of death or great bodily harm to the defendant; (2) the defendant was in fact put in fear by the apparent danger of immediate death or great bodily

harm and killed the victim because of that fear; and (3) a reasonable person in the same circumstances would have acted as the defendant did. UJI 14–5171 NMRA. When a defendant is claiming self-defense, his or her apprehension of the victim is an essential element of his or her claim. Therefore, under Rule 11–405(B), evidence of specific instances of the victim's prior violent conduct of which the defendant was aware may be admitted to show the defendant's fear of the victim. However, a victim's violent character is not an essential element of a defendant's claim of self-defense, but rather circumstantial evidence that tends to show that the victim acted in conformity with his or her character on a particular occasion. Thus, under Rule 11–405(B) NMRA, only reputation or opinion evidence should be admitted to show that the victim was the first aggressor. The discussion in *Baca I* that indicates otherwise was not necessary to the holding in that case.

{18} Therefore, we hold that the district court in the case at bar did not abuse its discretion in excluding the evidence of specific instances of prior domestic violence between Damacio and his wife. Further, we do not believe that the exclusion prevented Defendant from presenting an essential element of his defense. To the contrary, there was ample testimonial evidence presented at trial to support Defendant's contention that Damacio initiated the altercation, that Defendant was put in fear by Damacio, and that Defendant acted in self-defense. Specifically, several witnesses testified that it was Damacio who first approached and began fighting with Defendant and Nestor Chavez in the bar's parking lot.

**B. Double Jeopardy**

{19} Defendant argues that his convictions for aggravated battery with a deadly weapon and attempted murder violate the principles of double jeopardy. The New Mexico and United States Constitutions each contain a prohibition that no person "be twice put in jeopardy" for the same offense. N.M. CONST. art. II, § 15; U.S. CONST. amend. V. Because the issue of whether there has been a double jeopardy violation is a consti-

tutional one, we review de novo. *See State v. Attaway*, 117 N.M. 141, 145–46, 870 P.2d 103, 107–08 (1994); *see generally Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991).

{20} Our courts have delineated three separate protections afforded by the double jeopardy prohibition: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *Swafford*, 112 N.M. at 7, 810 P.2d at 1227 (citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)). Within the multiple punishment context, there are two types of cases: (1) multiple violations of the same statute, referred to as "unit of prosecution" cases; and (2) violations of multiple statutes, referred to as "double-description" cases. *Id.* at 8, 810 P.2d at 1228. Due to the fact that there are different values implicated for double jeopardy depending on the context and the type of case, different standards and tests have evolved. "New Mexico multiple punishment theory is marked by a profusion of terms and tests—each with its own formulaic approach—purportedly serving different double jeopardy or policy interests." *Id.* at 10, 810 P.2d at 1230. These tests were thoroughly discussed in *Swafford*, with this Court adopting a two-part test for double-description multiple punishment cases (the "*Swafford* test"). *Id.* at 13, 810 P.2d at 1233. The case at bar is a double-description multiple punishment case, and therefore the proper analysis to determine whether a double jeopardy violation has occurred is the *Swafford* test.

{21} The first part of the test requires the determination of whether the conduct underlying the offenses is unitary. *Id.* If it is, we proceed to the second part of the test, which requires us to examine the relevant statutes to determine whether the Legislature intended to create separately punishable offenses. *Id.* Absent clear legislative intent, we follow the rule of statutory construction known as the "*Blockburger* test," taken from *Blockburger v. United States*, 284

U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). This test focuses strictly upon the elements of the statutes. "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.* at 304, 52 S.Ct. 180. "[T]he evidence and proof offered at trial are immaterial." *Swafford*, 112 N.M. at 8, 810 P.2d at 1228. *See also Illinois v. Vitale*, 447 U.S. 410, 416, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) ("[T]he *Blockburger* test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial."); *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) ("This test emphasizes the elements of the two crimes. 'If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes ....'") (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975)); *Thigpen v. Roberts*, 468 U.S. 27, 36, 104 S.Ct. 2916, 82 L.Ed.2d 23 (1984) ("[T]his is about as clear a statement as there can be of the principle that the double jeopardy inquiry turns on the statutory elements of the two offenses in question, and not on the actual evidence that may be used by the State to convict in a particular case.") (Rehnquist, J., dissenting).

{22} Under the *Blockburger* test, which is simply a canon of construction used to assist in determining legislative intent and not a constitutional rule, if each statute requires an element of proof not required by the other, we presume that the Legislature intended to punish the offenses separately. *Swafford*, 112 N.M. at 9, 14, 810 P.2d at 1229, 1234. We must then turn to other indicia of legislative intent, including the language, history, and subject of the statutes, the social evils sought to be addressed by each statute, and the quantum of punishment prescribed by each statute. *Id.* at 14–15, 810 P.2d at 1234–35. If those factors reinforce the presumption of distinct, punishable offenses,

then there is no violation of double jeopardy. *See id.*

■ {23} Defendant argues that his convictions for both aggravated battery and attempted murder violate double jeopardy protections. He asserts that *"under the facts of this case,* there is no way in which the offense of Aggravated Battery is not subsumed within the offense of Attempted Murder." (Emphasis added.) Defendant's argument, however, is misplaced. This is a double-description multiple punishment case; therefore, the appropriate test is the *Swafford* test. *See id.* at 13, 810 P.2d at 1233. The State concedes that the conduct underlying the aggravated battery and the attempted murder, Defendant shooting but not killing Eric Montaño, was unitary. Therefore, we can proceed directly to the second step of the *Swafford* test, examining legislative intent. And, as stated above, determining legislative intent in this context has nothing to do with the facts and evidence presented at trial. It is based upon the statutory elements of the offenses. The issue is whether the Legislature intended multiple punishments when a person commits an act which violates both statutes. "[T]he Double Jeopardy Clause only prevents a court from imposing greater punishment than the Legislature intended." *State v. Dominguez,* 2005–NMSC–001, ¶ 5, 137 N.M. 1, 106 P.3d 563 (citing *Swafford,* 112 N.M. at 7, 810 P.2d at 1227). There is no clear legislative expression regarding whether or not to impose multiple punishments within the statutes of attempted murder and aggravated battery; therefore, we must first apply the *Blockburger* test. After doing so, we will examine other indicia of legislative intent.

■ {24} The elements of attempted murder are: (1) the defendant committed an overt act in furtherance of murder; (2) with the intent to commit murder; and (3) tending but failing to effect its commission. NMSA 1978, § 30–28–1 (1963) and NMSA 1978, § 30–2–1 (1994). The elements of aggravated battery are: (1) the unlawful touching or application of force to the person of another; (2) with intent to injure that person or another. NMSA 1978, § 30–3–5 (1969). Attempted murder requires an overt act, an intent to

commit murder, and the failure to complete the crime, none of which are elements of aggravated battery. Aggravated battery requires an unlawful touching or application of force, which attempted murder does not. Because the elements of one statute are not subsumed within the other, there is a presumption of legislative intent to punish the offenses separately. *Swafford,* 112 N.M. at 14, 810 P.2d at 1234.

■ {25} We next examine other indicia of legislative intent regarding the two statutes. "Legislative intent may be gleaned from the statutory schemes by identifying the particular evil addressed by each statute; determining whether the statutes are usually violated together; comparing the amount of punishment inflicted for a violation of each statute; and examining other relevant factors." *State v. Gonzales,* 113 N.M. 221, 225, 824 P.2d 1023, 1027 (1992) (quoting *Swafford,* 112 N.M. at 14–15, 810 P.2d at 1234–35). The prohibition against attempted murder is directed at protecting a person's life and the statute is directed at punishing a person's state of mind, whereas the prohibition against aggravated battery is directed at protecting a person from bodily injury and the statute is directed at punishing actual harm. Although similar, we must construe these harms narrowly. *Swafford,* 112 N.M. at 15, 810 P.2d at 1235. Statutes that are "directed toward protecting different social norms and achieving different policies can be viewed as separate and amenable to multiple punishments." *Id.* at 14, 810 P.2d at 1234. Also, there is nothing in the language of the statutes that indicates that the Legislature enacted both statutes as alternative ways of committing the same crime. *See State v. Cowden,* 1996–NMCA–051, ¶ 13, 121 N.M. 703, 917 P.2d 972. Further, although the two statutes may be violated together, they are not necessarily violated together. There are countless situations where aggravated battery is committed with only an intent to injure, not an intent to kill. "The fact that each statute may be violated independent of the other will also lend support to the imposition of sentences for each offense." *State v. Sosa,* 1997–NMSC–032, ¶ 36, 123 N.M. 564, 943 P.2d 1017 (citing *Swafford,* 112 N.M. at

14–15, 810 P.2d at 1234–35). In comparing the quantum of punishment for each offense, the difference in the amount of punishment is arguably an indication that the Legislature did *not* intend for aggravated battery and attempted murder to be separately punishable. However, this factor alone is not enough to overcome the other findings of legislative intent. *See State v. Fuentes,* 119 N.M. 104, 109, 888 P.2d 986, 991 (N.M.Ct. App.1994) ("The fact that punishment for armed robbery is three times the punishment for aggravated battery is one point in favor of [d]efendant's position, but it is not alone persuasive."). Therefore, after weighing all of the above factors, we hold that Defendant's convictions for attempted murder and aggravated battery do not violate the prohibition against double jeopardy.

{26} In determining that no double jeopardy violation has occurred in the case at bar, we re-emphasize that "the sole limitation on multiple punishments is legislative intent." *Swafford,* 112 N.M. at 13, 810 P.2d at 1233. The dissent asserts that our appellate courts have applied the *Swafford* and *Blockburger* tests in a "formalistic manner" and that "[a]t times it seems as if our appellate courts prefer the ease of looking up statutory elements of a crime, in place of the hard work of examining separately the policy goals and consequences of each criminal statute to divine legislative intent." We are well aware that the *Blockburger* test is simply a tool to use in divining legislative intent. Absent unambiguous language indicating whether the Legislature intended for aggravated battery and attempted murder to be separately punishable when one act violates both statutes, we conclude that the *Blockburger* test is the appropriate tool in the first step of determining legislative intent. We assume that in enacting the statutes in question, the Legislature was aware of the *Blockburger* test and could have included language indicating its intent not to punish these two offenses separately when committed as a result of the same act. *See Albernaz v. United States,* 450 U.S. 333, 341–42, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) ("[I]f anything is to be assumed from the congressional silence on this point, it is that Congress was aware of the *Blockburger* rule and legislated with it in mind."). "The plain meaning of the provision is that each offense is subject to the penalty prescribed; and, if that be too harsh, the remedy must be afforded by act of [the Legislature], not by judicial legislation under the guise of construction." *Blockburger v. United States,* 284 U.S. at 304, 52 S.Ct. 180. And, as with our above analysis in the case at bar, using the *Blockburger* test constitutes just a part of the examination of legislative intent.

{27} The dissent, like Defendant, uses *the facts of the case at bar* to assert that "[w]ithout application of force the Defendant could not have been convicted of aggravated battery and a double jeopardy analysis would not be necessary." But as previously stated, using the facts in a case to determine legislative intent is improper under *Blockburger.* The dissent's analysis is similar to the *"DeMary* test." In *State v. DeMary,* 99 N.M. 177, 655 P.2d 1021 (1982), this Court created a test which analyzes statutory elements in light of the evidence presented at trial. This Court has stated that this test is improper in the context of determining legislative intent. "The evidence adduced at trial has little to do with the central question in multiple punishment cases of the legislature's intent to authorize multiple punishment. Accordingly, we disagree with application of the *DeMary* test in the multiple punishment context and confine that test to determining the propriety of jury verdict alternatives." *Swafford,* 112 N.M. at 12, 810 P.2d at 1232.

{28} The dissent also states that aggravated battery is a lesser-included offense of attempted murder, citing to *State v. Meadors,* 121 N.M. 38, 908 P.2d 731 (1995), in support of its contention that the legislature did not intend to punish the two offenses separately. However, reliance on this case is misplaced. In *Meadors,* this Court held that aggravated battery was a lesser-included offense under the "cognate approach," which was the proper analysis to apply *when the prosecutor requests a jury instruction* on a lesser-included offense. *Id.* at 44, 908 P.2d at 737 (emphasis added). This Court did not create a general rule that aggravated battery is a lesser-included offense of attempted murder. In our discussion of the various analytical approaches of the issue of lesser-

included offenses, we stated that New Mexico has embraced a form of the "strict elements" test, under which, when determining legislative intent for double jeopardy purposes, "an offense [is] a lesser-included offense of another only if the statutory elements of the lesser offense are a sub-set of the statutory elements of the greater offense such that it would be impossible ever to commit the greater offense without also committing the lesser offense." *Id.* at 42, 908 P.2d at 735.

{29} In *Meadors*, the defendant was charged with attempted murder, aggravated arson, and negligent use of an explosive. At trial, the State requested a jury instruction on aggravated battery as a lesser-included offense of attempted murder. The defendant objected on the ground that aggravated battery is not a lesser-included offense of attempted murder and that the jury instruction would violate his constitutional right to notice of the crime charged. The defendant was convicted of aggravated battery and negligent arson. On appeal, the defendant argued that aggravated battery is not a lesser-included offense of attempted murder and that the trial court denied him due process by allowing the jury instruction. This Court stated that there are at least three different contexts in which the issue arises of whether one offense is a lesser-included offense of another: (1) in the context of double jeopardy; (2) when a defendant requests a jury instruction on a lesser-included offense of the crime charged; and (3) when a prosecutor requests a jury instruction on a lesser-included offense, which was the situation we reviewed in *Meadors*. *Id.* at 41, 908 P.2d at 734. This Court went on to discuss the different analyses involved in each context, distinguishing lesser-included offenses in the double jeopardy context from that of jury instructions. In the double jeopardy context, "New Mexico has embraced a form of the strict elements test, based on *Blockburger v. United States* ... as an aid in determining legislative intent for double jeopardy purposes." *Id.* (citing *Swafford*, 112 N.M. at 14, 810 P.2d at 1234) (internal citation omitted). This Court then held that when the prosecutor requests a jury instruction on a lesser-included offense, the appropriate analysis is

the *DeMary* approach. *Id.* at 44, 810 P.2d 1223, 908 P.2d at 737. It was not this Court's intention to create a rule that aggravated battery is always a lesser-included offense of attempted murder.

**CONCLUSION**

{30} The district court did not abuse its discretion by excluding the evidence of prior domestic abuse between Damacio and his wife. Defendant's separate convictions for aggravated battery and attempted murder do not violate double jeopardy principles. Therefore, we affirm.

{31} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PATRICIO M. SERNA, Justices, RICHARD C. BOSSON, Chief Justice (concurring in part and dissenting in part), and EDWARD L. CHÁVEZ, Justice (concurring in part and dissenting in part).

CHÁVEZ, Justice (concurring in part and dissenting in part).

{32} I concur with Section II(A) of the majority opinion. However, because in my view the legislature did not intend separate punishments for attempted first-degree murder and third-degree aggravated battery when convictions for both offenses arise from a single act of shooting and wounding a victim, I would vacate Defendant's aggravated battery conviction as a violation of double jeopardy. Therefore, I respectfully dissent from Section II(B).

{33} It is undisputed that Defendant's single act of shooting and wounding the victim resulted in convictions of both attempted first-degree murder and third-degree aggravated battery. Attempted first-degree murder requires proof that a defendant, with deliberate intent to kill, committed an overt act in furtherance of murder but failed to kill the victim. NMSA 1978, §§ 30–2–1 (1994), 30–28–1 (2006). Aggravated battery requires proof that a defendant, with intent to injure, touched or applied force to the victim. NMSA 1978, § 30–3–5 (2006). Aggravated battery is a misdemeanor if the touching was committed in a manner whereby great bodily harm or death is not likely to be inflicted.

§ 30–3–5(B). However, aggravated battery is a third-degree felony when the touching inflicts great bodily harm, is committed in a manner whereby great bodily harm or death can be inflicted, or is committed with a deadly weapon. § 30–3–5(C). Of course, a deadly weapon is an instrument or object that, when used, could cause death or great bodily harm. UJI 14–322 NMRA. In this case, Defendant was charged with aggravated battery constituting a third-degree felony.

{34} To support a conviction for both attempted first-degree murder and third-degree aggravated battery, the overt act required for attempted first-degree murder must be an application of force in a manner whereby great bodily harm or death can be inflicted. Otherwise, if the overt act did not involve the application of force (i.e. the defendant missed in his attempt to apply deadly force) the single act could not also support a conviction for aggravated battery. This is because aggravated battery requires proof that Defendant applied force to the victim. Shooting and wounding the victim satisfied the *actus reus* requirement under both statutes. Similarly, since the jury found that Defendant intended to kill the victim, the jury could also find that Defendant intended to injure the victim.[2] Thus, the single act of shooting at the victim and wounding the victim constitutes unitary conduct. Had the conduct not been unitary, the inquiry regarding double jeopardy would end, and the Defendant could be subjected to multiple punishments. However, because the conduct was unitary and resulted in two offenses, we must determine "whether the legislature intended multiple punishments for unitary conduct." *Swafford v. State*, 112 N.M. 3, 14, 810 P.2d 1223, 1234 (1991).

{35} My disagreement with the majority opinion arises from its formalistic application of the *Swafford* test. I agree with the majority that the Legislature has not expressly provided for double punishment for attempted first-degree murder and third-degree aggravated battery, and that we must therefore proceed to the *Blockburger* test. *Id.* at 14, 810 P.2d at 1234. Under *Blockburger*, we

must begin the analysis by determining whether the elements of one of the statutes at issue are subsumed within the other. *Id.; see Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (the test to determine whether the same act constitutes two offenses, or only one, is whether each statute requires proof of a fact which the other does not). Yet, even if we were to conclude that attempted first-degree murder does not subsume the elements of third-degree aggravated battery, the *Blockburger* test only raises a presumption that the Legislature intended multiple punishments for the single act. This presumption may be overcome by other indicia of legislative intent. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

{36} To support its conclusion that Defendant's dual convictions do not constitute double jeopardy the majority compares the elements of attempted murder with the elements of a misdemeanor aggravated battery. Maj. Op. ¶ 24. I would take a less formalistic approach than the majority and hold that attempted murder subsumes the elements of third-degree aggravated battery, since these are the crimes at issue in this case. The majority rejects this approach because they believe such an approach requires a court to look at the facts of the case which is more a *DeMary* analysis than a *Swafford* analysis. Maj. Op. ¶ 27. Considering the crimes actually charged, and thus the statutes actually at issue, is not the same as looking at the facts. This approach simply requires a court to consider the elements of the crimes as charged as opposed to crimes that were not charged. The approach also requires the court to be mindful that it was unitary conduct that gave rise to multiple convictions. In my opinion, such an approach is called for by *Swafford* and *Blockburger*. *See Swafford*, 112 N.M. at 8, 810 P.2d at 1228 (stating that the traditional *Blockburger* test for legislative intent focuses "upon the elements of the statutes at issue" and that "the proper inquiry focuses upon the elements of the statutes in question").

---

**2.** Had the jury found that Defendant intended only to injure the victim and not intended to kill the victim, the jury could not have convicted Defendant of attempted first-degree murder.

{37} For a single act to result in the conviction of attempted first-degree murder and third-degree aggravated battery the *actus reus* must be the same. Both require a showing of application of force. Without application of force the Defendant could not have been convicted of aggravated battery and a double jeopardy analysis would not be necessary. Moreover, the *mens rea* requirement of attempted murder, intent to kill, proves the *mens rea* requirement for aggravated battery, intent to injure. In other words, by convicting a defendant of attempted first-degree murder and third-degree aggravated battery based on unitary conduct, a jury has essentially stated, "The defendant is guilty of attempted first degree murder because he or she committed aggravated battery with the intent to kill." Although the *mens rea* element admittedly makes this a close case, in my opinion the elements of third-degree aggravated battery are subsumed within the elements of attempted first-degree murder. This is particularly true since aggravated battery is a lesser included offense of attempted murder. *See State v. Meadors*, 121 N.M. 38, 908 P.2d 731 (1995); *see also People v. Robideau*, 419 Mich. 458, 355 N.W.2d 592, 597 (1984) ("When one of the two statutes involved is a necessarily lesser included offense of the other, application of the *Blockburger* test will always raise the presumption that the two statutes involve the 'same offense'.") As such, I would conclude that the Legislature did not intend multiple punishments for such unitary conduct. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234. "[T]he inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *Id.*

{38} Even if attempted murder does not subsume the elements of aggravated battery, this court in *Swafford* requires a continued search for legislative intent which may overcome the presumption that the two statutes punish distinct offenses. *Id.* In my judgment, the most compelling statutory construction principle which mandates a finding of a double jeopardy violation in this case was stated by the *Swafford* court as follows:

> The quantum of punishment also is probative of legislative intent to punish. Where one statutory provision incorporates many of the elements of a base statute, and extracts a greater penalty than the base statute, it may be inferred that the legislature did not intend punishment under both statutes.

112 N.M. at 15, 810 P.2d at 1235. The disparate sentences for attempted first-degree murder and aggravated battery offer further support for my conclusion that the legislature did not intend to punish the offenses separately. Aggravated battery inflicting great bodily harm, committed with a deadly weapon, or committed in a manner whereby great bodily harm or death can be inflicted is a third-degree felony. § 30-3-5(C). A third-degree felony not resulting in the death of a human being is punishable by three years in prison. NMSA 1978, § 31-18-15(A)(8) (2005). Attempted first-degree murder is a second degree felony. § 30-28-1(A). A second-degree felony not resulting in death is punishable by nine years in prison. § 31-18-15(A)(5). Tripling the sentence when a defendant applies force with intent to kill as opposed to applying force with only an intent to injure is *indicia* of legislative intent to not punish each offense separately. As the *Swafford* Court explained: "If the punishment attached to an offense is enhanced to allow for kindred crimes, these related offenses may be presumed to be punished as a single offense." 112 N.M. at 15, 810 P.2d at 1235. Aggravated battery committed with the intent to injure is punishable by three years in prison. When the aggravated battery is done with an intent to kill, the legislature has enhanced the punishment to nine years and titled this kindred offense "attempted murder." This analysis comports with language in *Robideau*, relied on by this court in *Swafford*:

> Our criminal statutes often build upon one another. Where one statute incorporates most of the elements of a base statute and then increases the penalty as compared to the base statute, it is evidence that the Legislature did not intend punishment under both statutes. The Legislature has taken conduct from the base statute, decided that aggravating conduct deserves addi-

tional punishment, and imposed it accordingly, instead of imposing dual convictions. *Robideau* 355 N.W.2d at 604. I would not summarily reject this important statutory construction principle as has the majority. Maj. Op. ¶ 25. At the very minimum, the doctrine of lenity requires us to presume that the Legislature did not intend to pyramid punishments for the same offense. *Swafford,* 112 N.M. at 15, 810 P.2d at 1235.

{39} Defendant's dual convictions for attempted first-degree murder and third-degree aggravated battery violate the prohibition against double jeopardy, and the aggravated battery conviction must be vacated. For the foregoing reasons, I respectfully dissent from Section II(B) of the majority opinion.

BOSSON, Chief Justice (concurring in part and dissenting in part).

{40} I concur in Justice Chavez's thoughtful dissent on double jeopardy, and write separately only because, as a signatory to *State v. Vallejos,* 2000–NMCA–075, 129 N.M. 424, 9 P.3d 668 (holding that convictions under these same two criminal statutes did not violate double jeopardy), I find myself in the awkward position of reversing fields. I agree with my colleague that for too long our appellate courts have tended to apply *Swafford v. State,* 112 N.M. 3, 810 P.2d 1223 (1991) and *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) in a formalistic manner. At times it seems as if our appellate courts prefer the ease of looking up statutory elements of a crime, in place of the hard work of examining separately the policy goals and consequences of each criminal statute to divine legislative intent. In my view, in crafting *Swafford* former Chief Justice Ransom intended the *Blockburger* formula as but a step on the way, not the destination. My colleague, Justice Maes, has written an excellent opinion faithful to the direction of our precedent, post-*Swafford.* What we need, perhaps, is a change in direction, and I am grateful to Justice Chavez for providing its initial sketch.