This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

    Plaintiff-Appellee,

v.
                                  **NO. 28,348**

**DARYL DONALD BEGAYE**,

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Thomas J. Hynes, District Judge**

Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Susan Roth, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

Defendant appeals his conviction of accessory to voluntary manslaughter. Defendant raises two issues on appeal. Defendant asserts that there is insufficient evidence to support his conviction and that the district court erred in not allowing Defendant to introduce Jeremiah Nelson's (Victim) record for violent crimes. For the reasons that follow, we affirm.

**BACKGROUND**

Defendant Daryl Donald Begaye was charged with four counts of criminal misconduct including: accessory in the commission of murder in the second degree, assault with intent to commit a violent felony, conspiracy to commit assault with the intent to commit a violent felony, and tampering with evidence. Following a jury trial with his co-defendant, Daryl Williams, Defendant was convicted of accessory in the commission of voluntary manslaughter, a lesser included offense of the second degree murder charge.

The underlying facts of this matter are not disputed by the parties. Co-defendant and Victim were both involved in selling drugs. On the evening of July 14, 2006, Defendant and co-defendant were at a friend's house when Victim drove up in a Jeep with some passengers. After a verbal exchange, and after Victim threatened Defendant and co-defendant with a sawed-off shotgun, co-defendant stabbed Victim several times with a knife. Victim ultimately died from the wounds inflicted by co-

defendant. At trial, Defendant argued that his actions were in self-defense and that he was trying to protect his co-defendant.

**DISCUSSION**

Defendant presents two issues on appeal. Defendant contends: (1) that there was insufficient evidence to support his conviction; and (2) that the district court erred in excluding evidence of Victim's criminal record to be offered through the testimony of Victim's sister. Defendant argues that Victim's criminal record would be relevant to his theory of self-defense and defense of another. We address each in turn.

**Sufficiency of the Evidence**

"In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. This review "requires analysis of whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction. We determine whether a rational fact[]finder could have found that each element of the crime was established beyond a reasonable doubt." *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). We do "not weigh the evidence or substitute [our] judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789.

Defendant was charged with and convicted of accessory in the commission of voluntary manslaughter pursuant to NMSA 1978, Section 30-2-3(A) (1994) and Section 30-1-13. In order for the jury to find Defendant guilty of voluntary manslaughter, the jury was required to find beyond a reasonable doubt that

a. [D]efendant killed [Victim];

b. [D]efendant knew that his acts created a strong probability of death or great bodily harm to [Victim];

c. This happened in New Mexico on or about the 14th day of July, 2006.

UJI 14-221 NMRA. The jury was also instructed that, to find Defendant guilty of voluntary manslaughter under an aiding and abetting theory, the State had to prove each of the following elements:

1. [D]efendant intended that the crime be committed;

2. The crime was committed;

3. [D]efendant helped, encouraged or caused the crime to be committed.

4

UJI 14-2822 NMRA. The jury was given the intent instruction, UJI 14-141 NMRA, which required that it find that Defendant acted intentionally when he committed the crime.

In *State v. Carrasco*, 1997-NMSC-047, 124 N.M. 64, 946 P.2d 1075, our Supreme Court explained that "an accessory must share the criminal intent of the principal" and that the requisite intent "can be inferred from behavior which encourages the act or which informs the confederates that the person approves of the crime after the crime has been committed." *Id.* ¶ 7. *See also State v. Brenn*, 2005-NMCA-121, ¶ 24, 138 N.M. 451, 121 P.3d 1050 ("Intent is usually established by circumstantial evidence.").

Defendant argues that "[n]o evidence was presented that Mr. Begaye *intended* that voluntary manslaughter be committed" and that the State "failed to prove the 'intent' element of accessory liability." In support of this contention, Defendant notes that during the motion for directed verdict, "the judge had doubts about Mr. Begaye being an accessory." Further, Defendant contends that co-defendant acted alone when he stabbed Victim, and that Defendant was merely trying to protect co-defendant when he wrestled the sawed-off shotgun from Victim. Thus, Defendant argues that there was insufficient evidence for the jury to conclude that he intended for co-defendant to commit murder, or that he helped, encouraged, or caused co-defendant to fatally stab Victim. We disagree.

5

In this case, the jury heard testimony from several witnesses that Defendant intended to aid and abet co-defendant in the voluntary manslaughter of Victim. The jury heard testimony from Amanda Jackson, Victim's sister, who was in the Jeep when Victim was stabbed. Jackson testified that she was in the rear passenger seat of the Jeep when she saw Defendant and co-defendant walk together toward the Jeep. The two had been standing by their truck talking and "kept looking back towards the Jeep" before they approached Victim. Co-defendant approached Victim on the driver's side, while at the same time, Defendant approached on the passenger side. Victim rolled down the driver's side window, and a few words were exchanged with co-defendant who then reached into the Jeep. Simultaneously, Defendant opened the passenger door, got into the Jeep, and using both arms, attacked Victim in a "punching stabbing motion." Jackson testified that there was a gun on Victim's lap but that Victim did not point the gun at the co-defendant when he approached the Jeep.

Jackson further testified that Defendant had a shiny silver object in his hand when he opened the passenger side door. After Defendant and co-defendant entered the Jeep, Jackson saw that Victim was "leaning forward and saying ahhh, and that's when [Defendant] grabbed for the gun." Using both arms, Defendant and Victim struggled over the gun inside the Jeep. As they struggled over the gun, Defendant pulled Victim out of the Jeep. Defendant and co-defendant then dragged Victim to the back of the vehicle and fought with him. Jackson testified that during the fight,

6

the gun went off. Defendant and co-defendant ran to their truck and fled. Victim staggered to the passenger side of the Jeep and said he had been stabbed.

Nicole Trujillo-Thompson, who testified via an audiotape from a preliminary hearing, was a passenger in the Jeep when it arrived at 2806 Southside River Road. She testified that as she was getting out of the Jeep, she saw Defendant and co-defendant look at the Jeep, talk to one another, and then walk toward the Jeep together in an unfriendly manner. Defendant "had something in his hand that was long." He proceeded to enter the Jeep as Victim was rolling the driver's side window down. Trujillo-Thompson heard arguing and ran to the passenger side of the vehicle. She saw Defendant trying to wrestle the gun from Victim, while co-defendant was reaching in to the Jeep and either stabbing or hitting Victim. Trujillo-Thompson testified that she tried to stop Defendant from fighting with Victim but that Defendant shoved her. She further testified that although Defendant's arm was in a sling, it "wasn't hurt that bad" because he used his injured arm to push her while he was trying to take the gun away from Victim with his other hand.

The jury heard testimony from co-defendant, Darryl Williams, that he was at 2806 Southside River Road with Defendant when Victim pulled up in his vehicle. Co-defendant testified that although he was scared of Victim, he did not leave, but instead walked up to the Jeep with his hands in his pockets. After watching Defendant and Victim struggle with the shotgun, co-defendant grabbed a knife and stabbed Victim.

7

The stabbing occurred at about 1:00 a.m., after which Defendant and co-defendant fled the scene. They were arrested at about 8:00 a.m. the next morning. The two had traveled to multiple places throughout the night and never reported the incident to the police.

Defendant testified that he had seen Victim earlier in the day and had seen the sawed-off shotgun on Victim's hip at that time. Defendant had a previous run-in with Victim when a girl—at Victim's direction—punched Defendant's girlfriend. Defendant testified that he was fearful of Victim. However, when Victim pulled up, Defendant did not leave the scene, but instead approached Victim's Jeep with a fire poker in his hand. While Victim was wrestling with co-defendant, Defendant entered the Jeep in order to "get control of the gun." Defendant testified that he distracted Victim from defending himself against co-defendant's assaults by tugging at the gun and trying to get control of it. After the stabbing, Defendant and co-defendant drove by the hospital emergency room and saw Victim's Jeep there. Defendant testified that several hours later, the police were looking for him at a friend's house where he ended up that evening, but that he did not answer the door. He was arrested upon leaving the house when he believed the police had already left.

Defendant does not question the testimony of the witnesses in this case and instead argues that he "did not intend that [co-defendant] commit murder, nor did he help or encourage or cause [co-defendant] to fatally stab [Victim]." Defendant further

8

contends that he was merely "trying to wrestle the sawed-off shotgun out of [Victim's] hands in order to protect [co-defendant]." We note first that the jury was free to reject Defendant's version of the events that he was only acting in self-defense and defense of another. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (filed 1998). Moreover, there was ample testimony at trial, including from Defendant, that Defendant approached the Jeep with a tire iron or fireplace poker and then struggled with Victim over the shotgun while co-defendant was striking Victim. Co-defendant repeatedly stabbed Victim in the Jeep and therefore knew his acts would result in a strong probability of death or great bodily harm. Viewing the evidence in the light most favorable to the State, a reasonable jury could conclude that Defendant aided and abetted in the commission of the crime and that he shared the criminal intent of his co-defendant because he knew that co-defendant's acts of repeatedly striking Victim created a strong probability of death or great bodily harm. We hold there was sufficient evidence to support Defendant's conviction for accessory to voluntary manslaughter.

**Victim's Prior Convictions for Violent Crimes**

The next issue concerns whether the trial judge abused his discretion by not permitting Defendant to introduce evidence of Victim's former criminal convictions through the testimony of his sister. Defendant argues that he "wanted to introduce evidence of [Victim's] extensive record of convictions for violent crimes to

9

demonstrate why they were terrified of what [Victim] would do with his sawed-off shotgun." We have previously addressed this same issue in co-defendant Williams' appeal. *See State v. Williams*, No. 27,667, slip op. (N.M. Ct. App. Apr. 24, 2009), *cert. denied*, 2009-NMCERT-006, 146 N.M. 733, 215 P.3d 42. "[W]e review a trial court's admission or exclusion of evidence for abuse of discretion." *State v. Armendariz*, 2006-NMSC-036, ¶ 6, 140 N.M. 182, 141 P.3d 526. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted).

Amanda Jackson testified that she had been "hanging out" with Victim and others and witnessed the stabbing. On cross examination, co-defendant's counsel asked: "Ms. Jackson, your brother has a prior felony conviction for aggravated battery . . ." The State objected, arguing that Defendant had not laid the proper foundation for such a question and that there were limits with regard to how evidence of Victim's criminal history could be introduced given that Defendant intended to proceed on the theory of self-defense. Specifically, the State argued that

> if [Defendant is] doing a self-defense argument, [he] could let it in with
> respect to what [Defendant] knew of [Victim's] prior felonies, as to
> whether or not it created a sense of fear in [Defendant's] mind[], and not
> whether or not he was acting in conformity. I mean, (inaudible) prior
> felonies, we don't want to show conformity, we want to show whether

or not [Defendant] knew of these felonies, whether or not (inaudible) have a fear to act the way they act. [Jackson] is not the person to get these felonies in.

The trial judge sustained the State's objection. The judge indicated that he would consider taking judicial notice of Victim's former criminal convictions if, during the trial, defense counsel laid the appropriate foundation to permit him to do so.

Subsequently, co-defendant testified. Co-defendant described specific events illustrating Victim's propensity for violence and the regularity with which Victim carried guns. He also testified that he was scared of Victim that night, because he had been told Victim had guns and a "Rambo" knife. Defendant testified that when he saw Victim pull up to the house, he was afraid something was going to happen. However, neither Defendant nor co-defendant were ever asked—nor did they ever offer any testimony—about their knowledge of Victim's former criminal convictions or discussions they had with Jackson about those convictions. Defendant does not point us to any place in the record where the trial court prevented him from discussing his knowledge of Victim's criminal record.

In *Armendariz*, 2006-NMSC-036, ¶¶ 6-8, the defendant claimed self-defense and sought to introduce evidence through the testimony of the victim's widow that the victim had committed two acts of domestic violence. The trial court upheld the State's objection, and our Supreme Court affirmed. *Id.* ¶ 30. Our Supreme Court addressed and clarified the admissibility of evidence of a victim's prior violent

11

conduct submitted by a criminal defendant in support of a self-defense claim. *Id.* The Court noted that "evidence of specific instances of a victim's prior violent conduct may not be admitted to show that the victim was the first aggressor when the defendant is claiming self-defense." *Id.* ¶ 17. Further, the New Mexico Rules of Evidence, specifically Rule 11-405(B) NMRA, "only allow[s] evidence of specific instances of a person's conduct when the character or character trait of that person is an essential element of a charge, claim, or defense." *Armendariz*, 2006-NMSC-036, ¶ 17. The Court next concluded that "[w]hen a defendant is claiming self-defense, his or her apprehension of the victim is an essential element of his or her claim." *Id.* Accordingly, the Court held that "under Rule 11-405(B), evidence of specific instances of the victim's prior violent conduct *of which the defendant was aware* may be admitted to show the defendant's fear of the victim." *Id.* (Emphasis added).

As in *Armendariz,* Defendant here claims that he sought to elicit testimony from Victim's sister concerning specific instances of Victim's prior criminal conduct to demonstrate his fear of Victim for purposes of establishing his self-defense claim. However, as the State argues, Defendant failed to lay any foundation or explain how Jackson's knowledge concerning Victim's prior criminal convictions related to Defendant's own awareness of Victims's criminal background. Without the proper foundation demonstrating that Defendant knew about Victim's criminal record, any testimony Jackson could have given on that matter would have constituted evidence

of specific acts of conduct offered to prove the Victim's character, which *Armendariz* holds is inadmissible. 2006-NMSC-036, ¶¶ 17-18. Accordingly, we hold that the trial court did not abuse its discretion by excluding evidence of Victim's prior criminal conduct through Jackson's testimony.

**CONCLUSION**

For the reasons set forth above, we affirm Defendant's conviction.

**IT IS SO ORDERED.**


_____

**LINDA M. VANZI, Judge**


**WE CONCUR:**


_____

**MICHAEL D. BUSTAMANTE, Judge**


_____

**TIMOTHY L. GARCIA, Judge**