**Certiorari Granted, October 28, 2010, No. 32,510**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-098**

**Filing Date: July 1, 2010**

**Docket No. 28,316**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**MICHAEL SWICK,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Louis P. McDonald, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

**{1}**    Defendant Michael Swick was convicted of second degree murder, attempted murder (two counts), aggravated battery (deadly weapon, two counts), aggravated burglary (battery, two counts, and deadly weapon, one count), armed robbery (two counts), conspiracy (two counts), and unlawful taking of a motor vehicle. On appeal, Defendant raises four issues, contending that: (1) the second degree murder instruction was improper, (2) an instruction

1

on self-defense should have been given, (3) several of his convictions violate double jeopardy protections, and (4) the district court erred in denying his motion for a mistrial. For the reasons that follow, we affirm.

**BACKGROUND**

**{2}**     On the morning of January 21, 2006, Defendant and a group of others began consuming alcohol and driving around. Defendant, his cousin Benito Lopez, and a friend named Alex Ogle then borrowed a Jeep, which they used to "wreak[] havoc" before getting stuck in a ditch. The three consumed more alcohol, started "walking somewhere," and then Lopez briefly left on foot to return to the Jeep to retrieve some warmer clothes. When he returned, he saw Defendant standing above Ogle holding a large rock. Ogle was lying on the ground, bleeding, not moving, and apparently with no pulse. It was later determined that Ogle had sustained numerous stab wounds and blunt trauma injuries that ultimately caused his death.

**{3}**     After moving Ogle's body to some bushes, Defendant and Lopez left in search of a vehicle that they could steal. They came upon the home of Rita and Carlos Atencio, knocked on the door, and asked to use the telephone. After entering the house, they repeatedly stabbed, beat, and slashed both of the Atencios before taking fourteen dollars in cash and the keys to a van, in which they fled.

**{4}**     Defendant subsequently went to a friend's apartment to seek treatment for a wound to his hand. The police arrived in response to a 911 call. Defendant was ultimately convicted on the thirteen counts listed above. This appeal followed.

**JURY INSTRUCTION ON SECOND DEGREE MURDER**

**{5}**     The jury was instructed on both second degree murder and, as a lesser-included offense, voluntary manslaughter. However, the second degree murder instruction was not in conformity with UJI 14-210 NMRA, insofar as the instruction did not contain language stating that Defendant "did not act as a result of sufficient provocation." Instead, the jury was instructed pursuant to UJI 14-211 NMRA, which applies when voluntary manslaughter is not a lesser-included offense. Defendant contends that this instruction resulted in the omission of an essential element, such that reversal is in order. Because Defendant neither tendered an appropriate instruction nor raised the issue in any other fashion below, we review for fundamental error. *See State v. Cunningham*, 2000-NMSC-009, ¶ 8, 128 N.M. 711, 998 P.2d 176 (observing that jury instructions are reviewed for fundamental error when no objection was raised below). Fundamental error in connection with a jury instruction occurs if "a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* ¶ 14 (internal quotation marks and citation omitted).

**{6}**     In *Cunningham*, our Supreme Court elaborated on the capacity of other instructions to cure an instruction that improperly omits an element of the charged offense. Specifically,

2

the Court held that "in a fundamental error analysis jury instructions should be considered as a whole and a failure to include an essential element in the elements section may be corrected by subsequent proper instructions that adequately addresses the omitted element." *Id.* ¶ 21. Accordingly, applying the fundamental error analysis set forth in *Cunningham*, we must determine whether the erroneous jury instruction on second degree murder was "corrected by subsequent proper instructions that adequately addresse[d] the omitted element." *Id.* For the reasons that follow, we answer this question in the affirmative.

{7}     As previously indicated, the second degree murder instruction omitted the element negating sufficient provocation. However, the subsequent instruction on the lesser-included offense of voluntary manslaughter adequately addressed the omission. In conformity with UJI 14-220 NMRA, that instruction specifically explained:

> The difference between second degree murder and voluntary manslaughter is sufficient provocation. In second degree murder the defendant kills without having been sufficiently provoked, that is, without sufficient provocation. In the case of voluntary manslaughter the defendant kills after having been sufficiently provoked, that is, as a result of sufficient provocation. Sufficient provocation reduces second degree murder to voluntary manslaughter.

Additionally, the jury was separately instructed on the definition of "sufficient provocation."

{8}     The foregoing instructions clearly and explicitly informed the jury about the distinction between second degree murder and voluntary manslaughter. We therefore conclude that the deficiency in the second degree murder instruction, concerning the absence of sufficient provocation, was "corrected by subsequent proper instructions that adequately addresse[d] the omitted element," *Cunningham*, 2000-NMSC-009, ¶ 21, such that fundamental error did not occur.

{9}     Defendant urges this Court to depart from the principles articulated in *Cunningham*, on grounds that the "step-down" instruction conforming to UJI 14-250 NMRA required the jury to first address first and second degree murder before considering whether Defendant had committed voluntary manslaughter. Accordingly, Defendant contends that the instructions setting forth the elements of voluntary manslaughter and defining sufficient provocation cannot be said to have corrected the deficiency in the second degree murder instruction.

{10}     Defendant's argument runs afoul of the clear precedent established by *Cunningham*. Furthermore, the very first instruction to the jury indicated that all of the instructions must be considered as a whole. Finally, we note that the voluntary manslaughter instruction preceded the step-down instruction. As a result, insofar as the jury is presumed to have read and followed the instructions, *see State v. Gonzales*, 113 N.M. 221, 230, 824 P.2d 1023, 1032 (1992), we conclude that the jury was adequately informed.

3

**{11}** We also note that our recent opinion *State v. Sandoval*, 2010-NMCA-025, 147 N.M. 465, 225 P.3d 795 (filed 2009), *cert. granted*, 2010-NMCERT-__, __ N.M. __, __ P.3d __ (No. 32,149, Mar. 1, 2010), addressed a similar issue in which an error in jury instructions prevented the defendant from presenting self-defense with regard to one of the assailants. *Id.* ¶¶ 16-18. However, *Sandoval* is distinguished from the case before us because, in *Sandoval*, there was no curing instruction that permitted the jury to consider all of the assailants—rather than just the two that were included in the instructions—when deciding whether the defendant acted in self-defense. *Id.* ¶¶ 22, 26. In our case, as discussed above, the instructions, when read as a whole, were sufficient to cure the deficient second degree murder instruction.

**REQUESTED JURY INSTRUCTION ON SELF-DEFENSE**

**{12}** Defendant unsuccessfully sought an instruction on self-defense. He contends that the district court's failure to give his requested instruction was erroneous. "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (internal quotation marks and citation omitted).

**{13}** Defendant was required to present evidence supporting every element of self-defense in order to warrant a jury instruction on this issue. *State v. Gonzales*, 2007-NMSC-059, ¶ 19, 143 N.M. 25, 172 P.3d 162. The requirements of self-defense are:

> (1) an appearance of immediate danger of death or great bodily harm to the defendant, (2) the defendant was in fact put in fear by the apparent danger, and (3) a reasonable person in the same circumstances would have reacted similarly. The first two requirements, the appearance of immediate danger and actual fear, are subjective in that they focus on the perception of the defendant at the time of the incident. By contrast, the third requirement is objective in that it focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant.

*State v. Coffin*, 1999-NMSC-038, ¶ 15, 128 N.M. 192, 991 P.2d 477 (internal quotation marks and citation omitted).

**{14}** There is no direct testimony regarding the pertinent events because Defendant did not testify and no one else except Ogle, the deceased victim, witnessed the events. However, several witnesses testified that Defendant's hand was injured. In this regard, Lopez testified that he observed a wound to the back of Defendant's hand and that Defendant had told him Ogle had stabbed him. Officer John Wiese and Detective Michael Traxler of the Sandoval County Sheriff's Department similarly indicated that they had observed the wound and testified that Defendant had separately told them that Ogle had stabbed him.

**{15}** Although the foregoing testimony indicates that Ogle may have stabbed Defendant

in the back of the hand, it provides no information about the surrounding circumstances. The evidence therefore supplies no basis for inferring that Defendant's brutal attack on Ogle was objectively reasonable, particularly in light of countervailing considerations discussed below.

**{16}**    Defendant asserts that Detective Traxler's testimony provides adequate support for his requested instruction because Detective Traxler characterized Defendant's injury as defensive in nature. However, the transcript indicates otherwise. Although Detective Traxler explained that it was possible that Defendant's wound was defensive, he further explained that, in his experience, most defensive wounds are to the palm rather than to the back of the hand. We are unpersuaded by Defendant's argument that his arguably defensive wound indicates that his actions were necessarily in self-defense.

**{17}**    Nevertheless, we also consider the reasonableness of Defendant's conduct, of which the State's uncontroverted forensic evidence is a crucial consideration. The doctor who performed the autopsy testified extensively about the wounds that Ogle received. These included at least seven distinct stab wounds to his chest, one stab wound to his right cheek, and one stab wound to his back. Additionally, Ogle suffered numerous, severe blunt-force injuries in the area of his face and cranium. The doctor explained that either the stab wounds or the blunt-force injuries could have caused Ogle's death.

**{18}**    In light of the foregoing, specifically the large number and varying types of severe injuries inflicted on Ogle, in contrast to the relative superficiality of Defendant's injury, we conclude that even if Ogle stabbed Defendant's hand, Defendant's response cannot be regarded as objectively reasonable. *Cf. State v. Sutphin*, 2007-NMSC-045, ¶ 24, 142 N.M. 191, 164 P.3d 72 (concluding that the defendant's actions were not reasonable and did not support a self-defense instruction when he beat an initial attacker to death after rendering him unconscious); *State v. Lopez*, 2000-NMSC-003, ¶¶ 25-26, 128 N.M. 410, 993 P.2d 727 (filed 1999) (upholding refusal to instruct on self-defense when the defendant inflicted multiple stab wounds and crushed the victim's skull). *See generally State v. Rudolfo*, 2008-NMSC-036, ¶ 20, 144 N.M. 305, 187 P.3d 170 ("The law simply does not recognize any right to an acquittal based on a wholly unreasonable claim of a self-defense justification for taking the life of another."). Because a jury could not have found Defendant's use of deadly force to be objectively reasonable under the circumstances, a self-defense instruction was not warranted.

**DOUBLE JEOPARDY**

**{19}**    Defendant advances two double jeopardy arguments, contending that:  (1) his convictions for attempted murder (two counts) and for aggravated battery (deadly weapon, two counts) violate the constitutional protections of double jeopardy, such that the latter should be vacated; and (2) his convictions for aggravated burglary (battery, two counts) and for aggravated burglary (deadly weapon, one count) violate double jeopardy protections, such that the latter should be vacated. We apply a de novo standard of review. *See State v.*

*Lopez*, 2008-NMCA-111, ¶ 8, 144 N.M. 705, 191 P.3d 563 (indicating that both double-description and unit-of-prosecution issues are reviewed de novo).

**{20}** Controlling precedent exists with respect to Defendant's challenge to his convictions for attempted murder and for aggravated battery with a deadly weapon. In the case of *State v. Armendariz*, 2006-NMSC-036, ¶¶ 24-25, 140 N.M. 182, 141 P.3d 526, our Supreme Court held that convictions for both attempted murder and for aggravated battery with a deadly weapon do not present a double jeopardy problem because the elements of the offenses are not subsumed within each other and because other factors indicate legislative intent to separately punish.

**{21}** Despite the clear holding of the majority in *Armendariz*, Defendant urges this Court to adopt the position of the dissenting justices. This we cannot do. *See State v. Glascock*, 2008-NMCA-006, ¶ 26, 143 N.M. 328, 176 P.3d 317 (filed 2007) (noting that the Court of Appeals is bound by Supreme Court precedent), *cert. quashed*, 2009-NMCERT-006, 146 N.M. 734, 215 P.3d 43. Accordingly, we conclude that Defendant's convictions for attempted murder and for aggravated battery with a deadly weapon do not violate double jeopardy principles.

**{22}** With respect to Defendant's challenge to his convictions for aggravated burglary (battery, two counts, and deadly weapon, one count), we are not confronted with similarly controlling case law. We must therefore engage in an independent analysis.

**{23}** The first step in any double jeopardy case is to determine whether the conduct underlying the offenses is unitary. *State v. Bernal*, 2006-NMSC-050, ¶ 9, 140 N.M. 644, 146 P.3d 289; *State v. Dominguez*, 2005-NMSC-001, ¶ 22, 137 N.M. 1, 106 P.3d 563. "Conduct is unitary if it is not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished." *State v. LeFebre*, 2001-NMCA-009, ¶ 17, 130 N.M. 130, 19 P.3d 825.

**{24}** As previously indicated, two of Defendant's convictions for aggravated burglary are premised on battery, and the third conviction is premised on possession of a deadly weapon. With respect to the first two convictions, the underlying conduct consisted of Defendant's unauthorized entry into the Atencios' home with the intent to commit theft therein and his committing battery upon Mr. and Mrs. Atencio after entering. With respect to the third conviction, the underlying conduct consisted of Defendant's unauthorized entry into the Atencios' home with the intent to commit theft therein and his act of arming himself with a knife once inside.

**{25}** In the briefs, the parties devote no argument to the question of whether the foregoing acts should be characterized as unitary conduct. Therefore, as a matter of expediency, we will assume without deciding that the underlying conduct was unitary.

**{26}** Next, we must determine what type of double jeopardy issue is presented with

6

respect to each of the challenged convictions. *See State v. Frazier*, 2007-NMSC-032, ¶ 13, 142 N.M. 120, 164 P.3d 1 (describing the distinction between unit-of-prosecution and double-description issues). The offense of aggravated burglary may be committed in several ways. *See* NMSA 1978, § 30-16-4 (1963). Defendant was convicted of aggravated burglary based on two different statutory provisions: Subsection (B) (involving a deadly weapon) and Subsection (C) (involving battery).

**{27}** When convictions under separate subsections of a single statute are at issue, we apply the double-description analysis. *See State v. Franco*, 2005-NMSC-013, ¶ 14, 137 N.M. 447, 112 P.3d 1104 (observing that the courts "treat statutes written in the alternative as separate statutes" for double jeopardy purposes); *State v. Rodriguez*, 113 N.M. 767, 771, 833 P.2d 244, 248 (Ct. App. 1992) ("[A] criminal statute written in the alternative creates a separate offense for each alternative and should therefore be treated for double jeopardy purposes as separate statutes would." (internal quotation marks and citation omitted)). Accordingly, with respect to the permissibility of the separate convictions under Subsections (B) and (C), we must examine legislative intent, focusing on a comparison of the elements of the offenses. *See generally Armendariz*, 2006-NMSC-036, ¶ 23 ("[D]etermining legislative intent in this context has nothing to do with the facts and evidence presented at trial. It is based upon the statutory elements of the offenses.").

**{28}** The elements of aggravated burglary as defined in Subsection (B) clearly differ from the elements of the offense as defined in Subsection (C). Very briefly, the former requires proof that the defendant armed himself with a deadly weapon after entry, whereas the latter requires proof that the defendant committed battery during a burglary. Because each statutory alternative requires an element of proof not required by the other, we presume that the Legislature intended to punish the offenses separately. *Id.* ¶ 22.

**{29}** Finally, we must consider "other indicia of legislative intent, including the language, history, and subject of the [statutory subsections], the social evils sought to be addressed by each [subsection], and the quantum of punishment prescribed by each [subsection]." *Id.* We have been made aware of nothing in relation to language or history that would undermine the presumption. The quantum of punishment under either subsection is the same, which might suggest that separate punishments are inappropriate. However, we deem the subject of the subsections, as well as the social evils sought to be addressed by each, to be distinct. *Cf. Franco*, 2005-NMSC-013, ¶ 14 (recognizing that a statute that has been written in the alternative may serve several purposes, have many meanings, and incorporate a wide range of deterrent possibilities). Although we acknowledge that there is some overlap insofar as Section 30-16-4 is generally addressed to burglary and, therefore, the prevention of intrusion into protected spaces, *see State v. Foulenfont*, 119 N.M. 788, 790, 895 P.2d 1329, 1331 (Ct. App. 1995) (explaining that the general purpose of the burglary statute is to protect possessory rights with respect to prohibited spaces), the particular subsections at issue in this case are directed toward supplemental considerations. Specifically, Subsection (B) is designed to address the heightened threat associated with possession of deadly weapons and to deter their possession in the course of burglaries even if no use is intended. *State v.*

7

*Anderson*, 2001-NMCA-027, ¶ 21, 130 N.M. 295, 24 P.3d 327. By contrast, Subsection (C) is designed to address actual physical injury to persons during a burglary. *See State v. Roper*, 2001-NMCA-093, ¶ 12, 131 N.M. 189, 34 P.3d 133 (stating that "the harm protected by the battery statutes [is] physical harm, i.e., physical injury to persons"). Because these factors reinforce the presumption of distinct, punishable offenses, we conclude that Defendant's convictions pursuant to these two separate statutory subsections do not offend double jeopardy principles.

## MOTION FOR MISTRIAL

**{30}** On the second day of trial, during the testimony of one of the State's witnesses, Defendant spontaneously rose from his seat at the defense table and made a statement to the effect that he had to "go somewhere" because he could not "handle" the proceedings. The security officers then intervened, and Defendant was restrained. The court recessed. When it reconvened roughly thirty minutes later, the judge stated for the record that there had been "an incident in the courtroom where [Defendant] had to be taken down, and at least some of the jurors, I think, saw what happened."

**{31}** The judge subsequently conducted individual voir dire in order to inquire about what the jurors had seen or heard and to determine whether they could remain fair and impartial. Eight jurors indicated that they had observed either an altercation between the officers and Defendant, or Defendant being restrained by the officers; the remaining seven jurors stated that they had not observed anything—although several stated that they had heard a "disturbance" or a "racket" while exiting the courtroom. All fifteen stated that they would remain fair and impartial and that they could base their decision solely on the evidence presented at trial. The judge also indicated to the jurors that the incident was the product of stress associated with the trial and that Defendant's subsequent restraint did not reflect on his guilt or innocence.

**{32}** Defendant moved for a mistrial, asserting that the jurors' awareness of the incident between Defendant and the security officers would add "another layer of prejudicial information . . . in terms of [Defendant's] propensity to act out in a particular fashion that could be perceived as being threatening." Observing further that Defendant would attend the remainder of the proceedings in restraints, counsel argued that his right to a fair trial had been compromised. The district court denied the motion.

**{33}** Defendant contends that his motion should have been granted. We review the district court's ruling for abuse of discretion. *State v. Gallegos*, 2009-NMSC-017, ¶ 21, 146 N.M 88, 206 P.3d 993. "An abuse of discretion exists when the trial court acted in an obviously erroneous, arbitrary, or unwarranted manner." *Id.* (alteration, internal quotation marks, and citation omitted).

**{34}** The district court handled the situation in an appropriate manner. In light of every juror's clear indication that he or she could remain fair and impartial, as well as the court's

admonition, we conclude that the denial of the motion did not constitute an abuse of discretion. *Cf. State v. Martinez*, 99 N.M. 353, 355, 658 P.2d 428, 430 (1983) (holding that a motion for mistrial was properly denied when the judge admonished the jury to disregard the defendant's outbursts); *State v. Guy*, 82 N.M. 483, 483-85, 483 P.2d 1323, 1323-25 (Ct. App. 1971) (holding that, despite numerous outbursts in the course of which the defendant was repeatedly restrained, a motion for mistrial was properly denied when the trial court instructed the jury that the outbursts were not to have any bearing on their deliberations and the trial otherwise "proceeded carefully and calmly to insure the defendant received a fair and impartial trial"); *see also State v. Paul*, 83 N.M. 527, 529, 494 P.2d 189, 191 (Ct. App. 1972) (upholding the denial of a motion for mistrial and observing that a defendant should "not . . . be permitted to gain from his outbursts").

## CONCLUSION

**{35}**   For the foregoing reasons, we affirm.

**{36}**   **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for *State v. Swick*, Docket No. 28,316**

| CT | CONSTITUTIONAL LAW |
|---|---|
| CT-DJ | Double Jeopardy |

| CL | CRIMINAL LAW |
|---|---|
| CL-AG | Aggravating or Mitigating Circumstances |
| CL-BA | Battery |
| CL-EL | Elements of Offense |
| CL-HO | Homicide |
| CL-MU | Murder |
| CL-SD | Self-defense |
| CL-VM | Voluntary Manslaughter |

9

CL-WO                           Weapons Offences

**CA**                          **CRIMINAL PROCEDURE**
CA-CD                           Conduct of Defendant
CA-DJ                           Double Jeopardy
CA-JI                           Jury Instructions
CA-MT                           Mistrial
CA-SD                           Self-defense

**JI**                          **JURY INSTRUCTIONS**
JI-CJ                           Criminal Jury Instructions
JI-FG                           Failure to Give or Request
JI-IJ                           Improper Jury Instructions