This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO**,

    Plaintiff-Appellee,

v.                                                                                    **NO. 30,337**

**GUADALUPE URQUIZO,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Robert S. Orlik, District Judge**

Gary K. King, Attorney General
Margaret McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee


Jacqueline L. Cooper, Acting Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Judge.**

Defendant Guadalupe Urquizo appeals from his convictions of attempted first-degree murder and aggravated battery on a peace officer with a deadly weapon, both related to the stabbing of a corrections officer at the Curry County Detention Center with a jail-made weapon, commonly known as a "shank." We reject Defendant's arguments that the jury was not presented with sufficient evidence to support the requisite deliberate intent to kill. We further hold Defendant's convictions for attempted first-degree murder and aggravated battery do not violate double jeopardy. Accordingly, we affirm Defendant's convictions in all respects.

**FACTUAL SUMMARY**

On October 23, 2008, Defendant was transported from the Curry County Detention Center, where he was detained as a prisoner, to attend a court hearing. Upon his return to the detention center later that afternoon, Defendant asked Corrections Officer David Casanova whether he was allowed the recreation period he missed while at court. When Officer Casanova said he would have to check with his supervisor, Defendant grabbed the officer's shoulder-mounted radio and stated "use your fucking radio, that's what it's for." In response to Defendant's aggressive behavior, Officer Casanova informed Defendant that he would not get

his recreation period as a consequence for grabbing the radio. The Defendant was returned to his "pod" and the officer continued with his duties.

Several hours later, Officer Casanova and another corrections officer, Michael Turvey, entered Defendant's pod to collect dinner trays. When they approached Defendant's cell and opened his door to remove the trays within, Defendant stepped outside of his cell and asked again about his recreation period. Officer Casanova repeated his earlier decision that Defendant would not get his recreation time due to Defendant's unauthorized touching of his radio. Defendant immediately leaped toward Officer Casanova, grabbed him around the shoulder, and stabbed the officer five times with a metal shank he had concealed in his waistband. Officer Turvey rushed to the aid of Officer Casanova, tackled Defendant and caused all three participants to fall to the ground. Officer Casanova suffered a broken hand from the fall and five superficial wounds from the shank—two to the stomach, two to the upper right shoulder, and one to the upper left arm. Only the wound to the stomach appears to have broken the skin, but each caused discernible bruising and were visually apparent in photographs admitted into evidence at trial. Officer Turvey's hand was also injured in the melee, a wound which he described to be "superficial . . . from reaching in the middle of [Defendant] swinging . . . [and] trying to stop the situation[.]"

At trial, Defendant was convicted on counts of attempted first-degree murder of Officer Casanova, third-degree aggravated battery with a deadly weapon against both officers, and possession of a weapon by an inmate. On appeal before our Court, Defendant challenges his conviction for attempted murder, claiming that the evidence was insufficient to show deliberate intent to kill. Defendant also claims that his convictions for both aggravated battery and attempted murder violate the constitutional protections of double jeopardy. We discuss the merits of those claims below.

**DISCUSSION**

**The State Presented Adequate Evidence of Deliberate Intent to Kill**

"In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. Review for substantial evidence "requires analysis of whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction. We determine whether a rational factfinder could have found that each element of the crime was established beyond a reasonable doubt." *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86 (citations omitted).

In this case, Defendant restricts his argument on appeal to the element of intent, arguing that sufficient evidence was not presented for a rational jury to have found beyond a reasonable doubt that Defendant deliberately intended to kill Officer Casanova. Defendant is correct that specific intent to kill is required to support a conviction of attempted first-degree murder. *State v. Hernandez*, 1998-NMCA-167, ¶ 10, 126 N.M. 377, 970 P.2d 149. The uniform jury instruction characterizes the required intent as *deliberate* intent and defines it as follows:

> A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

UJI 14-201 NMRA.

Defendant argues that "there was *no evidence* from which the jury could infer, without surmise and conjecture, that [Defendant] deliberately intended to take the life of [Victim]." (Emphasis added.) We note initially that direct evidence demonstrating Defendant's intent to kill is not required. *State v. Hoeffel*, 112 N.M. 358, 361, 815 P.2d 654, 657 (Ct. App. 1991) (stating that "[i]ntent can be proved

5

by circumstantial evidence" alone). Moreover, "[i]ntent is subjective and is almost always inferred from other facts in the case . . . ." *State v. Duran*, 2006-NMSC-035, ¶ 7, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted).

The sequence of events and evidence presented by the State supports an inference that because Defendant was enraged by Officer Casanova's refusal to grant him a recreation period, he methodically plotted to kill the officer several hours later when the officer came to pick up his dinner tray. To this end, Defendant, who was admittedly angry at Officer Casanova, armed himself with a shank prior to the arrival of the officers to his cell. Video evidence shows that Defendant then waited at the entry to his cell where he again confronted Officer Casanova about his recreation period. When he heard the officer's second refusal, he immediately launched a brutal attack that was also captured on videotape and played for the jury. Officer Turvey testified that he believed the attack would "have continued . . . had [he] not gotten involved. Finally, Investigator Sandy Loomis testified that the shank used was "eight, almost ten inches long, [of] solid metal, [and] . . . a very good weight," which "could be used to inflict serious, deadly harm to someone." Despite the weight of evidence offered, Defendant analogizes the facts of his case to those found to be insufficient in *State v. Garcia*, 114 N.M. 269, 837 P.2d 862 (1992) and distinguishes them from those found to be

6

sufficient in *State v. Flores*, 2010-NMSC-002, 147 N.M. 542, 226 P.3d 641. We agree that these two cases provide a good framework for analysis, representing the opposite ends of the spectrum in terms of defining sufficient evidence of deliberate intent to kill. But we disagree with Defendant's conclusions as to which case is more factually similar to the facts herein. We hold Defendant's case is more akin to *Flores*, and the many cases which similarly hold that sufficient evidence supported the jury's verdict, than to the rare circumstances presented by *Garcia*. *See State v. Riley*, 2010-NMSC-005, ¶ 14, 147 N.M. 557, 226 P.3d 656; *Duran*, 2006-NMSC-035, ¶ 8; *State v. Sosa*, 2000-NMSC-036, ¶ 14, 129 N.M. 767, 14 P.3d 32; *Cunningham*, 2000-NMSC-009, ¶ 28; *State v. Rojo*, 1999-NMSC-001, ¶ 24, 126 N.M. 438, 971 P.2d 829.

In *Garcia*, the defendant had consumed large amounts of alcohol leading up to and during the party where he later murdered his long-time friend. *Garcia*, 114 N.M. at 270, 837 P.2d at 863. Over the course of several hours during the party, the defendant alternated between arguing and reconciling with the victim, before ultimately engaging in a physical fight with the victim. *Id.* The physical altercation ended when the defendant stabbed the victim in the chest, killing him. *Id.* Although the defendant made incriminating statements before the killing—"Remove Ray away from me or you're not going to be seeing him for the rest of the day," and after—"I did it. I did it. I'm not ashamed to admit it. I told

7

my brother I did him and I'd do him again," the Court held that "[t]here was *no evidence* to support the jury's conclusion that . . . Garcia decided to stab [his victim] as a result of careful thought; that he weighed the considerations for and against his proposed course of action; and that he weighed and considered the question of killing and his reasons for and against this choice." *Id.* at 274, 837 P.2d at 867.

Defendant's behavior in the case at bar, however, did not demonstrate any intoxication or ambivalence with respect to the violence intended. Defendant had a motive, armed himself, waited for his victim, and when the opportunity presented itself, repeatedly struck his victim with a deadly weapon. Indeed, the assault ended only due to the intervention of another officer. Additionally, the jury was able to see first-hand Defendant's demeanor in the minutes preceding and during the attack itself. In particular, the force and vigor with which Defendant's attack was perpetrated is compellingly documented by the State's video evidence. We thus conclude that the facts of this case are more closely analogous to those in *Flores*, where the defendant stalked his victim, armed himself, lay in wait, confronted the victim, and then stabbed him repeatedly with a screwdriver. *Flores*, 2010-NMSC-002, ¶ 22.

We therefore conclude, as the Court did in *Flores*, that "[t]he totality of the evidence in this record . . . supports rational findings by a jury that Defendant . . .

8

acted deliberately, rather than rashly and impulsively," in attempting to kill Officer Casanova. *Id.* ¶ 24 (internal quotation marks and citation omitted). We therefore uphold the jury's verdict and affirm Defendant's conviction of attempted first-degree murder.

**Defendant's Convictions for Aggravated Battery and Attempted Murder Do Not Violate Double Jeopardy**

Defendant argues that his "convictions for attempted first-degree murder and third-degree aggravated battery . . . violate the state and federal constitutional guarantees against double jeopardy because they subjected him to multiple punishments for actions that amounted to only attempted murder." As an initial matter, we note that to preserve a claim under the New Mexico Constitution, Defendant would have had to raise it in district court, and provide a basis on which to interpret the state constitution more broadly than the federal constitution where, as here, the provision in question has not been previously addressed under our interstitial analysis. *State v. Leyva*, 2011-NMSC-009, ¶ 49, 149 N.M. 435, 250 P.3d 861. Defendant asserts protection under the New Mexico Constitution for the first time on appeal, and the issue was therefore not preserved. Accordingly, we analyze Defendant's claims under the United States Constitution alone. *See id.* ¶ 8.

Defendant's double jeopardy argument is a "double-description" claim; *i.e.*, Defendant was convicted under two separate statutes, which may or may not be

9

considered the same offense for double jeopardy purposes. *State v. Gutierrez*, 2011-NMSC-024, ¶ 49, 150 N.M. 232, 258 P.3d 1024. We apply what is "generally a two-part inquiry for double-description claims, first analyzing whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates both statutes[] and, if so, proceeding to analyze whether the legislature intended to create separately punishable offenses." *Id*. ¶ 51 (internal quotation marks and citation omitted).

Defendant argues that the conduct underlying his convictions for aggravated battery and attempted murder was unitary, and the State does not challenge the point. We assume the conduct was unitary, without deciding, and move to the second prong of analysis: whether the Legislature intended to separately punish the same conduct under multiple statutes.

The State does not argue that the Legislature specifically provided for multiple punishments for the conduct at issue, and we see no such intent on the face of the attempted-murder and aggravated-battery statutes. *See* NMSA 1978, § 30-2-1 (1994); NMSA 1978, § 30-3-5 (1969); NMSA 1978, § 30-28-1 (1963). When the Legislature has not clearly authorized multiple punishments, we examine the statutory provisions underlying the convictions to determine "whether each provision requires proof of a fact [that] the other does not." *Gutierrez*, 2011-NMSC-024, ¶ 56 (internal quotation marks and citation omitted). If that test

10

"establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *Id*. (citation omitted).

As the parties note, this Court and our Supreme Court have recently examined convictions of aggravated battery and attempted murder to determine whether their combination is appropriate under the double jeopardy clause. *See State v. Armendariz*, 2006-NMSC-036, 140 N.M. 182, 141 P.3d 526; *State v. Swick*, 2010-NMCA-098, 148 N.M. 895, 242 P.3d 462, *cert. granted*, 2010-NMCERT-010, 149 N.M. 65, 243 P.3d 1147. In both instances, the convictions were found not to violate the constitutional protection against double jeopardy. *Armendariz*, 2006-NMSC-036, ¶ 30, *Swick*, 2010-NMCA-098, ¶ 29. *Swick* followed *Armendariz*, holding that:

> Controlling precedent exists with respect to [the d]efendant's challenge to his convictions for attempted murder and for aggravated battery with a deadly weapon. In [*Armendariz*], our Supreme Court held that convictions for both attempted murder and for aggravated battery with a deadly weapon do not present a double jeopardy problem because the elements of the offenses are not subsumed within each other and because other factors indicate legislative intent to separately punish.

*Swick*, 2010-NMCA-098, ¶ 20. In *Swick*, as here, "[d]espite the clear holding of the majority in *Armendariz*, [the d]efendant urges this Court to adopt the position of the dissenting justices. This we cannot do." *Id*. ¶ 21. As long as *Armendariz*

remains good law, we are bound by its holding, however strenuously Defendant may argue that its dissent is better reasoned. We must therefore conclude that "convictions for attempted murder and aggravated battery [with a deadly weapon] do not violate the prohibition against double jeopardy." *Armendariz*, 2006-NMSC-036, ¶ 25.

**CONCLUSION**

Because we hold that the jury was presented with sufficient evidence upon which to conclude that Defendant deliberately intended to kill Officer Casanova, and because we are bound by precedent to hold that Defendant's convictions present no impediment to his right to be free from double jeopardy, we affirm the judgment of the district court.

**IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

12

_____

**LINDA M. VANZI, Judge**