**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: **MARCH 2, 2017**

**NO. 34,165**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**ARMIS BELLO,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ross C. Sanchez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**ZAMORA, Judge.**

{1}   Defendant Armis Bello appeals from his convictions for trafficking cocaine by distribution, contrary to NMSA 1978, Section 30-31-20(A)(2) (2006), and trafficking cocaine by possession with intent to distribute, contrary to Section 30-31-20(A)(3). Defendant argues that (1) his convictions violate the prohibition against double jeopardy, (2) the State presented insufficient evidence to sustain his convictions, and (3) he received ineffective assistance of counsel. We affirm in all respects.

**BACKGROUND**

{2}   On November 11, 2009, an Albuquerque Police Department (APD) undercover narcotics team conducted an undercover operation in an area of the city known to police for narcotics-related activity. Detective David Jaramillo was the case agent for the operation and was the undercover officer responsible for making the narcotic purchases. Detective Jaramillo was dropped off in the targeted area, where he observed a man standing at the corner of an intersection with no apparent purpose and who appeared to be a "flagger" or a person that solicits sales of narcotics. The man was later identified as Ralph Franco.

{3}   Detective Jaramillo approached Franco and asked whether Franco was "holding"—which is common street terminology for possessing narcotics for sale.

After Detective Jaramillo indicated that he was looking for crack cocaine, Franco told him that he did not have any but that he could take Detective Jaramillo to another location to make a purchase. Detective Jaramillo followed Franco on foot to a parking lot a few blocks away. Once they arrived at the parking lot, Franco identified Defendant as the person selling the crack cocaine. Detective Jaramillo gave Franco a $20 bill and watched as Franco approached Defendant and gave him the money. In exchange, Defendant gave Franco an unknown substance. Franco returned to Detective Jaramillo and handed him a clear cellophane package containing what appeared to be a small rock of crack cocaine.

{4}     According to Detective Jaramillo, the rock Franco gave him was very small, "way under the value" of the money exchanged. Staying "in role" Detective Jaramillo questioned Franco about being shortchanged, and then he approached Defendant directly. Defendant brushed Detective Jaramillo's complaint off and told him that the small rock was all he was getting. Detective Jaramillo asked Defendant if he had any more to sell, and Defendant indicated that he did. Detective Jaramillo bought a second rock from Defendant for ten dollars. As he left the parking lot, Detective Jaramillo gave his team the bust signal. Defendant, Franco, and a third subject identified only as Aguilar, were arrested.

2

{5} The two rocks Detective Jaramillo purchased were labeled and tagged into APD evidence. Both substances were tested by the APD crime lab and were positively identified as cocaine. Defendant was indicted for trafficking cocaine by distribution, conspiracy to commit trafficking, trafficking cocaine by possession with intent to distribute, and tampering with evidence. Defendant was convicted of trafficking cocaine by distribution and trafficking cocaine by possession with intent to distribute.

**DISCUSSION**

**Double Jeopardy**

{6} Defendant contends that his convictions for trafficking cocaine by distribution and possession of cocaine with intent to distribute violate the prohibition against double jeopardy. "A double jeopardy challenge is a constitutional question of law[,] which we review de novo." *State v. Swick* (*Swick II*), 2012-NMSC-018, ¶ 10, 279 P.3d 747. "The Fifth Amendment of the United States Constitution[,] . . . made applicable to New Mexico by the Fourteenth Amendment[,]" prohibits double jeopardy and "functions in part to protect a criminal defendant against multiple punishments for the same offense." *Id.* (internal quotation marks and citation omitted). Double jeopardy cases involving multiple punishments are classified as either double description cases, "where the same conduct results in multiple

convictions under different statutes[,]" or unit of prosecution cases, "where a defendant challenges multiple convictions under the same statute." *Id.*

{7} In the present case, both parties assert that Defendant's convictions under Subsection (A)(2) (distribution) and Subsection (A)(3) (possession with intent to distribute) implicate a double description analysis. Defendant relies on this Court's decision in *State v. Swick (Swick I)*, 2010-NMCA-098, 148 N.M. 895, 242 P.3d 462, *aff'd in part, rev'd in part by Swick II*, 2012-NMSC-018. In *Swick I*, the defendant illegally entered the victims' home, and once inside, beat and stabbed the victims before taking $14 and the victims' vehicle. *Swick I*, 2010-NMCA-098, ¶ 3. The defendant was convicted of one count of second degree murder, two counts of attempted murder, two counts of aggravated battery with a deadly weapon, two counts of aggravated burglary by battery, one count of aggravated burglary with a deadly weapon, two counts of armed robbery, two counts of conspiracy, and unlawful taking of a motor vehicle. *Id.* ¶ 1.

{8} On appeal, the defendant argued, among other things, that his convictions for aggravated burglary involving a deadly weapon, contrary to Subsection (B) of NMSA 1978, Section 30-16-4 (1963), and aggravated burglary involving battery, contrary to Subsection (C) of the same statute, violated his double jeopardy protections. *See Swick I*, 2010-NMCA-098, ¶ 26. This Court stated, "[w]hen convictions under

4

separate subsections of a single statute are at issue, we apply the double[]description analysis." *Id.* ¶ 27. Applying a double description analysis to the facts of the case, we determined that the convictions did not "offend double jeopardy principles." *Id.* ¶¶ 28-29.

{9}     In *Swick II*, the New Mexico Supreme Court granted certiorari to address a number of issues, including whether the defendant's convictions under Section 30-16-4 violated double jeopardy.[1] *See Swick II*, 2012-NMSC-018, ¶¶ 6, 43-44. The Supreme Court applied a unit of prosecution analysis since the two convictions were under the same statute. *Id.* ¶ 33 (stating that "[w]e apply a unit[]of[]prosecution analysis because we are examining multiple convictions under the same statute"). The Supreme Court held that the two aggravated burglary convictions did violate double jeopardy. *Id.* ¶ 44. The Supreme Court did not offer an explanation or directly address

[1]There is a factual discrepancy between *Swick I* and *Swick II* that in turn generates a discrepancy in the applicable subsection of Section 30-16-4 to the defendant's aggravated burglary (deadly weapon) conviction. Our analysis of Section 30-16-4(B) in *Swick I* was based on the defendant "arming himself with a knife once inside" the victims' home. *Swick I*, 2010-NMCA-098, ¶ 24; *see* § 30-16-4(B) ("Aggravated burglary consists of the unauthorized entry . . . with intent to commit any felony or theft therein and the person . . . : after entering, arms himself with a deadly weapon[.]"). In *Swick II*, the Supreme Court's analysis of Section 30-16-4(A) was based on the defendant's unauthorized entry into the victims' home armed with a knife. *Swick II*, 2012-NMSC-018, ¶¶ 35, 43; *see* § 30-16-4(A) ("Aggravated burglary consists of the unauthorized entry . . . with intent to commit any felony or theft therein and the person . . . : is armed with a deadly weapon[.]"). Nonetheless, the pertinence of *Swick I* and *Swick II* is the double jeopardy analysis for more than one conviction based on different subsections of one statute.

the double description analysis applied by this Court in *Swick I*. For its unit of prosecution standard the Supreme Court relied on *State v. Gallegos*, 2011-NMSC-027, ¶ 31, 149 N.M. 704, 254 P.3d 655. *Gallegos* involved three convictions under the same subsection of the conspiracy statute. *Id.* Thus, it appears that double jeopardy claims involving multiple convictions under different statutes are to be analyzed the same way as double jeopardy claims based on multiple violations of different subsections under one statute—using the unit of prosecution standard analysis. *See Swick II*, 2012-NMSC-018, ¶ 10.

{10} We follow the approach taken by our Supreme Court in *Swick II* and apply a unit of prosecution analysis to Defendant's double jeopardy claim even though, like the subsections of the burglary statute in *Swick II*, the subsections of the trafficking statute have different elements. *See Aguilera v. Palm Harbor Homes, Inc.*, 2002-NMSC-029, ¶ 6, 132 N.M. 715, 54 P.3d 993 (recognizing that the Court of Appeals is bound by Supreme Court precedent).

{11} "In unit of prosecution cases, the defendant is charged with multiple violations of a single statute based upon acts that may or may not be considered a single course of conduct." *State v. Sena*, 2016-NMCA-062, ¶ 8, 376 P.3d 887. To determine the correct unit of prosecution, we consider "whether the [L]egislature intended punishment for the entire course of conduct or for each discrete act." *Swafford v.*

6

*State*, 1991-NMSC-043, ¶ 8, 112 N.M. 3, 810 P.2d 1223. First, courts look to the language of the statute to determine if the Legislature has defined the unit of prosecution. *Swick II*, 2012-NMSC-018, ¶ 33. If so, the inquiry is complete and proceeds no further. *Id.* Where the unit of prosecution is not clearly defined in the language of the statute, courts proceed to analyze "whether a defendant's acts are separated by sufficient indicia of distinctness to justify multiple punishments." *Gallegos*, 2011-NMSC-027, ¶ 31 (internal quotation marks and citation omitted).

{12}    In this case, we do not reach the second part of the test because we conclude that the Legislature defined the unit of prosecution to be one transfer of a controlled substance. *See Swick II*, 2012-NMSC-018, ¶ 33 (concluding that for Section 30-16-4(A) and (C) the Legislature defined the unit of prosecution to be an unlawful entry with intent to commit a felony therein). Section 30-31-20(A) provides in pertinent part: "[a]s used in the Controlled Substances Act, 'traffic' means the: (1) manufacture of a controlled substance . . . ; (2) distribution, sale, barter or giving away of . . . a controlled substance . . .;  or (3) possession [of a controlled substance] with intent to distribute." Here, Defendant was convicted of one count each of trafficking by distribution and trafficking by possession with intent to distribute. As used in the Controlled Substances Act, to " 'distribute' means to deliver" and to " 'deliver' means

the actual, constructive or attempted transfer [of a controlled substance] from one person to another." NMSA 1978, § 30-31-2(G), (J) (2009).

{13} In *State v. Borja-Guzman*, this Court noted that the "various means of trafficking and the broad definition of deliver evinces a legislative intent to authorize prosecution and punishment for each separate transfer of a controlled substance." 1996-NMCA-025, ¶ 13, 121 N.M. 401, 912 P.2d 277. In *Borja-Guzman*, the defendant gave undercover agents a sample of methamphetamine and a sample of heroin. *Id.* ¶ 2. Approximately four hours later, the defendant met undercover agents in the same location and sold them quantities of the same substances. *Id.* ¶¶ 2-3. The defendant was convicted of multiple trafficking offenses. *Id.* ¶ 4. He challenged the convictions on double jeopardy grounds, arguing that the distribution of a sample of a controlled substance and the subsequent sale of the same substance at the same place and to the same person or persons, constituted only one transfer. *Id.* ¶ 14. This Court rejected that argument holding that "the [L]egislature clearly intended, in its enactment of Section 30-31-20 criminalizing drug trafficking, to authorize separate prosecution and punishment for each individual transfer or delivery under the circumstances where the transfer is not contemporaneous." *Id.* ¶ 26.

{14} In the present case, Defendant's convictions arose from two separate transfers of a controlled substance. The first transfer occurred when Detective Jaramillo

8

purchased the first rock cocaine from Defendant through Franco. The second transfer occurred moments later when Detective Jaramillo purchased the second rock cocaine from Defendant directly. While the two sales occurred within a short period of time, they did not occur contemporaneously and fall within the Legislature's authorization for separate punishment. *See id.*

{15}     Defendant argues that the two purchases were part of one ongoing transaction since the second purchase would not have occurred, but for Detective Jaramillo's dissatisfaction with the first purchase. We disagree. Section 30-31-20(A)(2) defines the unit of prosecution as one controlled substance transfer. Here, there were two distinct exchanges between Defendant and Detective Jaramillo. In each exchange, Defendant transferred a distinct quantity of cocaine to Detective Jaramillo in exchange for a distinct sum of money. The reason for the second purchase is not germane to our analysis. We conclude that Defendant's convictions under Section 30-31-20(A)(2) and (3) do not violate double jeopardy.

**Sufficiency of the Evidence**

{16}     Defendant challenges the sufficiency of the evidence to support both trafficking convictions. Defendant asserts that possession of cocaine is a required element of both trafficking offenses with which he is charged, and he claims that the evidence was insufficient to establish possession because other than Detective

Jaramillo's testimony, the State did not present any evidence that he possessed cocaine. We are unpersuaded.

{17} "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Torrez*, 2013-NMSC-034, ¶ 40, 305 P.3d 944 (internal quotation marks and citation omitted). Our Supreme Court has expressly established a two-step process for applying this test. *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076. First we must "draw every reasonable inference in favor of the jury's verdict." *Id.* Then we "evaluate whether the evidence, so viewed, supports the verdict beyond a reasonable doubt." *Id.*

{18} In order to find Defendant guilty of trafficking cocaine by possession with intent to distribute, the State had to prove beyond a reasonable doubt that on or about November 11, 2009, Defendant had cocaine in his possession, knowing it was cocaine, or believing it to be some drug or other substance the possession of which is regulated or prohibited by law, and that Defendant intended to transfer it to another. With regard to this charge, Detective Jaramillo testified that Franco agreed to take him to a location where he could purchase crack cocaine. Franco identified Defendant as the person selling the crack cocaine. Detective Jaramillo gave Franco

a $20 bill and watched as Defendant removed an unknown substance from his mouth and gave it to Franco in exchange for the buy money. Franco returned and gave Detective Jaramillo a package containing a small rock, which later tested positive as cocaine. From this testimony, a jury could reasonably infer that the unknown substance Defendant gave to Franco in exchange for the buy money was the same rock of cocaine that Franco gave to Detective Jaramillo. In other words, a jury could reasonably infer that Defendant was in possession of the first rock of cocaine and intended to transfer it to Detective Jaramillo through Franco.

{19} The jury instruction on trafficking by distribution provided that, in order to find Defendant guilty of trafficking cocaine by distribution, the State had to prove beyond a reasonable doubt that on or about November 11, 2009, Defendant transferred cocaine to another, knowing that it was cocaine, or believing it to be some drug or other substance the possession of which is regulated or prohibited by law. Detective Jaramillo testified that after Defendant brushed off his complaints about the first purchase, Detective Jaramillo asked if Defendant had more to sell, and Defendant confirmed that he did. Defendant sold Detective Jaramillo a second rock for $10, removing the package from his mouth, exchanging it for a $20 bill and giving Detective Jaramillo $10 in change. Based on this testimony, a jury could reasonably infer that Defendant transferred cocaine directly to Detective Jaramillo.

{20} Drawing all reasonable inferences from the evidence in favor of the verdict, as we must, we conclude that the evidence is sufficient to support Defendant's convictions for trafficking by distribution and trafficking with intent to distribute.

**Ineffective Assistance of Counsel**

{21} Defendant asserts that he received ineffective assistance of counsel because his attorney failed to call key defense witnesses. "We review claims of ineffective assistance of counsel de novo." *State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44.

{22} "The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees . . . the right to the effective assistance of counsel." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 21 P.3d 1032 (internal quotation marks and citation omitted). "When an ineffective assistance claim is first raised on direct appeal, [the appellate courts] evaluate the facts that are part of the record." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. "A prima facie case of ineffective assistance is made by showing that defense counsel's performance fell below the standard of a reasonably competent attorney and, due to the deficient performance, the defense was prejudiced." *Patterson*, 2001-NMSC-013, ¶ 17 (internal quotation marks and citation omitted). "A prima facie case for ineffective assistance of counsel is not made if there is a

plausible, rational strategy or tactic to explain the counsel's conduct." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 26, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted).

{23} As to the first prong, "[d]efense counsel's performance is deficient if it falls below an objective standard of reasonableness[,]" usually judged as an action contrary to "that of a reasonably competent attorney." *Dylan J.*, 2009-NMCA-027, ¶ 37. Our review of counsel's performance is "highly deferential" in that counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (internal quotation marks and citation omitted). Therefore, a defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Hunter*, 2006-NMSC-043, ¶ 13, 140 N.M. 406, 143 P.3d 168 (internal quotation marks and citation omitted). "If there is a plausible, rational strategy or tactic to explain counsel's conduct, a prima facie case for ineffective assistance is not made." *Dylan J.*, 2009-NMCA-027, ¶ 39.

{24} As to the second prong, "[a] defense is prejudiced if, as a result of the deficient performance, there was a reasonable probability that . . . the result of the trial would have been different." *Id.* ¶ 38 (omission in original) (internal quotation marks and citation omitted). "A reasonable probability is one that is sufficient to undermine

13

confidence in the outcome." *Id.* (internal quotation marks and citation omitted). The deficient performance "must represent so serious a failure of the adversarial process that it undermines judicial confidence in the accuracy and reliability of the outcome." *Id.* (internal quotation marks and citation omitted).

{25}     Defendant claims ineffective assistance of counsel on the grounds that his attorney did not call Franco and Aguilar as witnesses at trial. Defendant asserts that the men were necessary defense witnesses whose testimony would likely have exculpated him. However, Defendant does not point to any facts in the record that support this claim. Thus, Defendant has not made a prima facie showing of ineffective assistance of counsel. However, "this decision does not preclude [the d]efendant from pursuing habeas corpus proceedings on this issue should he be able to garner evidence to support his claims." *State v. Bernal*, 2006-NMSC-050, ¶ 36, 140 N.M. 644, 146 P.3d 289.

**CONCLUSION**

{26}     For the foregoing reasons, Defendant's convictions are affirmed.

{27}     **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

14

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**STEPHEN G. FRENCH, Judge**